IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FARMERS EDGE INC.,<br>FARMERS EDGE (US) INC., and<br>FARMERS EDGE (US) LLC,<br><br>           Plaintiffs,<br><br>    vs.<br><br>FARMOBILE, LLC,<br>JASON G. TATGE,<br>HEATH GARRETT GERLOCK, and<br>RANDALL THOMAS NUSS,<br><br>           Defendants. | 8:16CV191<br><br>PRODUCTION FORMAT<br>AND E-DISCOVERY PROTOCOL |

    This matter is before the court on the parties' Stipulation and Joint Motion for Protective Order and ESI Protocol Governing the Disclosure and Use of Discovery Materials (Filing No. 76). The parties have agreed, and the court adopts, the following provisions should govern the production format for Electronically Stored Information ("ESI"), other than source code, as well as paper documents being produced electronically.

I. **Preliminary Matters.**

    A.    The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software, which for Defendants is kCura Relativity.

    B.    Documents that present imaging or formatting problems shall promptly be identified and, if the documents cannot be readily re-produced without problems, the parties shall promptly meet and confer to attempt to resolve the problems.

    C.    This Protocol is to be read in conjunction with the Protective Order that the parties anticipate the Court will enter in this matter. To the extent that any provision herein conflicts with the Protective Order, the Protective Order provision shall govern.

II. **Document Image Format and Other Considerations**.

    A.    Paper Documents - Hard copy documents shall be produced in single page TIFF. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as they existed in the original when creating the image file. The relationship of

documents in a document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained throughout the scanning or conversion process.

B.    Electronic Files (except spreadsheets, presentations, and other files not generally accessed via single page layout) - Electronic documents shall be produced in single page TIFF, with the exception of non-redacted spreadsheet, e.g. Excel, and presentation, e.g., PowerPoint; however, a requesting party may make a subsequent request for native format production upon particularized need pursuant to Paragraph VI below. Metadata for documents generated from native electronic documents shall be produced as set forth in Paragraph VII. Electronic files, whether converted to images or produced in native format, also shall be produced with parent and child files intact; appropriate Parent ID and Child ID numbers shall be provided. When a document is withheld for any reason and is part of a family of documents, its absence should be designated with a placeholder image with a corresponding production number.

C.    Spreadsheets and Presentations - Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain files to be produced in native file format (*e.g.*, Excel, Lotus 123 or PowerPoint); the parties, therefore, agree the producing party shall produce spreadsheets, such as those created in Excel or Lotus 123, and presentations, such as PowerPoint, in native format pursuant to Paragraph VI below. For natively produced documents in a family of documents, a placeholder TIFF image should be also included with a corresponding production number and confidentiality designation, if any. The parties reserve the right to omit placeholder images for large quantities of native files. The parties must disclose the Bates range of files being produced without placeholders, or otherwise appropriately identify them for the receiving party.

D.    TIFFs – All TIFFs shall be placed in an Images folder with subfolders not to exceed 5,000 images per folder and accompanied by appropriate load files for the document management or litigation support software being used by the receiving party (such as .dii, .opt, .dat, etc.), which shall be placed in a data folder.

E.    Color - Documents containing color need not be originally produced in color. If, however, an original document contains color necessary to understand the meaning, context, and/or content of the document, the producing party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.

F.    Duplicates - To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party is only required to produce a single copy of a responsive document.

This de-duping should be done <u>only</u> on exact duplicate documents, meaning the parent and child documents are <u>exactly the same</u>. De-duplication done within and across custodians (horizontal de-duplication) is acceptable but the producing party must inform the receiving party that horizontal de-duplication is being employed. Also, any horizontal de-duplication must be done in a manner to preserve information on blind copy (BCC) recipients of emails. Parties must take care to ensure that when custodians are eliminated from a data set for review and production, de-duplication was not based on that custodian's data set. When horizontal de-duplication is employed, the producing party must provide information identifying the data sets from which duplicates were removed, such as through a "duplicate custodian" field.

G. "Loose" Electronic Files – "Loose" electronic files and user files will not be de-duplicated against e-mail data. If a "Loose" electronic file or user file is a duplicate of a document in the e-mail data (i.e., an attachment to an e-mail), the parties shall produce separately both the e-mail data, including the attachments, and the "Loose" electronic files and user files.

H. E-mail "Threading" - The parties are generally not required to produce an original e-mail and its responses thereto as separate, unique documents. The parties are allowed, but not required, to produce the final, all-inclusive "thread" to represent the comprehensive e-mail conversation. Any and all divergences from the all-inclusive thread by any custodian must be separately assessed for production. If a receiving party believes there is a need for production of emails separately within a given thread, the producing party shall produce them separately or the parties will promptly meet and confer to attempt to resolve the issue.

I. Searchable Text - For produced images, a producing party shall produce full text extracted from the electronic files, accompanied by a load file. For redacted documents, full text consisting of OCR will be provided. The .txt/OCR will be provided in document level or page level files and in a full text folder, with the docid (begbates) and file path provided in the data folder. It is the producing party's obligation to make sure that documents containing text are searchable to the extent practicable. The producing party is obligated to promptly raise any issues that arise pertaining to non-searchable data containing text.

J. Documents Stored in Third Party Electronic Repositories – To the extent the parties produce documents that are in the possession of third parties, they shall apply the provisions of this Protocol to the extent practicable under the circumstances. The parties reserve the right to request that the cost of any effort beyond what is practicable be shifted to the requesting party.

K. The parties agree that it is not necessary to search for relevant information from the following sources of electronically stored information:

    a. RAM (random access memory);

3

    b. fragmented files, or other deleted items that may reside in unallocated space on a device

    c. logs of e-mail history;

    d. temporary Internet History such as cookies and cache;

    e. non-executable and system files; and

    f. legacy system ESI.

The parties agree that cause must be shown in order to discover information from these sources due to the additional cost and burden that may be associated with them, and the parties reserve the right to request that the cost of such retrieval and searching be shifted to the requesting party.

L.    Application - This Protocol only applies to the production of paper documents being produced electronically and the following categories of electronic documents: e-mails (and any associated attachments) and user files (word processing documents, spreadsheets, and presentations). The parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing, including databases, websites, and social media pages.

### III. Privileged Documents.

A.    When a document is withheld for privilege and is part of a family of documents, its absence due to privilege should be designated with a placeholder image and a corresponding production number, which then should be noted on the contemporaneously prepared Privilege Log that is to be prepared in accordance with Paragraph IX herein.

B.    In order to provide searchable text, redacted items must be imaged and OCR'd after redaction.

C.    If a native file needs to be redacted, it will be produced in redacted form as an imaged document.

D.    Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

### IV. Production Numbering.

A.    Each page of a produced document shall have a legible, unique page identifier (Production Number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information on the source document. No other legend or stamp will be placed on

the document image other than a confidentiality legend (where applicable), placeholder text (where applicable), redactions, and the Production Number identified above.

B.     The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information on the source document.  Natively produced files should include an image placeholder (but see Section II.C.) and accompanying text file, with an accompanying reference field in the load file which will be used to load the document into the litigation support software.

C.     Each party will be assigned a unique identifying name of three letters as follows:

- Farmers Edge, Inc., Farmers Edge (US) Inc., and Farmers Edge (US) LLC, collectively, will use the prefix "FEI," followed by a 7 digit number (*i.e.*, "FEI#######") to identify all paper documents or imaged documents converted from paper.

- Farmobile, LLC and the individual Defendants will use the prefix "DEF-CCPLF," followed by a 7 digit number (*i.e.*, "DEF-CCPLF#######) to identify all paper documents or imaged documents converted from paper.

**V.**     **Native File Production**.  (Please note that Paragraphs B-E below also apply to the initial native production of spreadsheets and presentation files.)

A.     The parties agree that a party seeking production in Native format must demonstrate a particularized need for the production. If any documents were initially produced in TIFF, and native production is subsequently agreed to, the native files will be named with the beginning Bates number of the previously produced TIFF and have a corresponding load file containing the beginning Bates number and the location of the native file.

B.     Native file production numbering - For all documents produced in native format, each party will include the production number of the corresponding TIFF (but see Section II.C), as well as any confidentiality designation, as the file name.

C.     For each document produced in native format, a HASH value shall be provided for each document and included with the production in the form of a load or cross-reference file (.csv, .dat or .txt) containing the metadata fields (*see* Paragraph VIII.).

D.     Any file produced in native format that is entitled to be redacted must be redacted in imaged form.  If imaged form is not acceptable to the receiving party with good cause shown, the parties shall meet and confer with respect to suitable

5

techniques and methods of redaction to preserve the integrity of the data while protecting information subject to privilege or other protections, or reach another agreement regarding the pertinent information contained in the document.

**VI. Production Method.**

A. A producing party shall produce their production documents on CD-ROM, DVD, external drive, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). The parties may also produce their production documents by means of secure electronic delivery, such as a password protected FTP site.

B. The following Information shall be identified on the Production Media: (1) the producing party's name, (2) the production range(s), (3) the production date, and (4) a confidentiality stamp, if appropriate.

**VII. Metadata.**

A. The producing party's extractions of the following metadata fields, where available, will be accompanied by a load file containing:

- title for user files, if it exists;
- author for user files;
- date created for user files;
- last modified date for user files;
- date and time received for e-mails;
- date and time sent for e-mails;
- subject line for e-mails;
- to, from, CC, and BCC for e-mails;
- duplicate custodian;
- file path;
- file name;
- file size;
- message ID;
- thread ID;
- hash (also identify the value used); and
- application.

6

    B.    Producing parties also shall produce the following additional information, as described below, with each production:

- starting production (beginning document production number);
- ending production (ending document production number);
- parent production number and child/attachment production number;
- family range;
- custodian;
- source (location from which document was collected) or file path; and
- document properties (*e.g.*, loose file, e-mail, attachment, hard copy, calendar appointment).

    C.    The metadata listed above shall be labeled and produced and provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Summation or Concordance (.csv, .dat or .txt) and placed in a data folder.

**VIII.**    **Exceptions to Protocol**.

    A.    If the forms of production allowed by this Protocol present an undue burden or cost for a producing party or if the document requests are redundant to discovery already served and responded to, the parties shall meet and confer to agree on a reasonable, alternative form and/or scope for the production.

    B.    Any party may file a motion to seek individual relief from this Protocol, with each party to bear its own costs and expenses associated with such motion.

**IX.**    **Privilege Logs**.

    A.    After the parties have completed document production, if the parties cannot exchange privilege logs within 15 days of final production, each party will inform the other side of the amount of time required to complete the log based on the volume and issues presented. Disagreements related to a party's proposed timing must be addressed in a telephonic conference. The contents of privilege logs must comply the requirements of the District of Nebraska.

    B.    The log shall be in Excel format or a similar electronic format that allows text searching and organization of data.

    C.    The parties agree that communications with or at the direction of outside counsel related to disputes in issue in this lawsuit or to matters not directly in issue in this lawsuit but related to the business of the parties do not need to be logged.

    D.    Proposals for categorical logging under appropriate circumstances are generally favored, but the circumstances and topics for which categorical logging is appropriate must be agreed upon by the parties. The parties must also agree on the information to be provided in a categorical log. If the parties are unable to agree on the circumstances for and content of categorical logs, traditional document-by-document logging must occur.

## X.   Costs of Production.

    A.    Each party shall, unless subject to one of the exceptions stated herein, bear its own legal fees and costs associated with the production of paper and/or electronic documents and other information.

    B.    In addition to those specific circumstances agreed to herein, the parties reserve the right to seek cost shifting as appropriate at a later time.

    C.    This Protocol does not restrict the parties rights under 26(b)(2)(B) or (C).

**IT IS SO ORDERED**.

Dated this 24th day of October, 2016.

                                                BY THE COURT:

                                                s/ Thomas D. Thalken
                                                United States Magistrate Judge